UNITED STATES DISTRICT COURT
for the
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 1:23-cr-00006-RCL |
| | ) |
| DEBORAH ANNE KUECKEN | ) |
| and | ) |
| GARY FRANCIS SMITH, | ) |
| | ) |
| | ) |
| Defendants. | ) |

_____

**SENTENCING MEMORANDUM**
**DEFENDANTS DEBORAH KUECKEN AND GARY SMITH**
_____

NOW COMES, Defendants Deborah Kuecken and Gary Smith, by and through their attorney, David Griem, and submit this *Sentencing Memorandum* in the above-captioned matter. For the reasons set forth herein, Defendants request that this Honorable Court sentence Defendants Deborah Anne Kuecken and Gary Francis Smith to a term of probation, with community service and appropriate restitution. The undersigned does not believe that house arrest is appropriate under the facts and circumstances of this case, which are more fully explained below.

I. **STATEMENT OF THE CASE**

Defendants Deborah Kuecken and Gary Smith each pled guilty to one count of violating 18 U.S.C. § 5104(e)(2)(G). On January 6, 2020, Defendants Kuecken and Smith entered the Capitol Rotunda through the second floor central east doors at 3:02 pm. They walked around the Rotunda

1

floor and exited the Capitol Building through the same doors at 3:05 pm, moments before a significant police presence entered the Rotunda.

## II.     STATEMENT OF FACTS

A few days before January 6th, Gary Smith decided to travel to Washington, D.C. in his motor home to attend then President Trump's rally and invited his sister, Deborah Kuecken to go with him. They left for Washington, D.C. on January 5th, and encountered mechanical problems with the motor home along the way. Due to these mechanical problems, they did not arrive at their campsite in Maryland until late in the evening. They both overslept the next morning because they were tired from the long drive and travel difficulties. They then hurried to the train station and took the train from Maryland to Washington D.C. and started to walk towards the Ellipse, near the White House. As they were walking, they noticed people walking towards the Capitol and standing on the Capitol Grounds. They approached the Capitol from the east, making their way to the East Plaza and the central east steps. The people on the steps started to move towards the Capitol doorway, and Defendants Kuecken and Smith followed. Defendants then walked around the Rotunda floor, observing and commenting on the artwork and the beauty of the building, while several police officers stood nearby, at the doorway (See Images 9, 10, 11, 12 in the Government's Sentencing Memorandum, ECF Document No. 39, pps. 6-7). A police officer calmly suggested to Smith that they "get while the gettin's good", and they wisely took his advice. They left the Rotunda at about 3:05 pm to head back to the train station. As they left the Capitol, they saw a large contingent of law enforcement heading towards the East Plaza of the Capitol[1].

---

[1] Photographs 9 and 10 in the *Government's Sentence Memorandum* show Defendant's in the Rotunda. Photograph 11 shows law enforcement starting to clear the Rotunda at 3:05:57 pm, after Defendants had already left the building. Photograph 12 shows Defendants entering the Rotunda with officers standing nearby the entrance way.

Defendants Kuecken and Smith never posted on any social media platform that they were planning on attending the Trump rally. Nor did they post anything about the presidential election results, or about challenging the electoral college vote that would be taking place in the Capitol. They had not taken a position on those topics and had nothing to say. They did not wear any patriotic or inflammatory clothing; bring any signs protesting the election results or electoral college vote; shout anything to the crowd (and certainly did not shout anything incendiary, designed to inflame the people around them); and they did not possess anything that could be used as a weapon. Moreover, they did not venture to other areas in the Capitol Building and did not engage in any destructive or assaultive behavior while on the Capitol grounds. Rather, they joined the crowd standing on the Capitol grounds steps and then entered the Rotunda. Kuecken and Smith then peacefully walked around for approximately 3 to 4 minutes before leaving the Capitol to make their way home.

After leaving the Capitol, Defendants never glorified the events which took place on January 6th or the actions of others who desecrated the Capitol grounds and building. The only post on social media by either Smith or Kuecken was Kuecken's response to a couple of social media posts, stating that "You weren't there, you don't know what happened" and "Well, that didn't happen where I was".

Thereafter, they fully cooperated with the FBI investigation, which was polite, non-confrontational and rather friendly.They met with the FBI agents in charge of their case and answered all of the questions asked of them; they provided the FBI with their cell phones and the clothing they wore on January 6th; and they provided the FBI with their social media information. Finally, Defendants admitted their guilt by entering into a plea agreement early on in this matter. They then entered a guilty plea in which they accepted full responsibility for their actions.

Defendants deeply regret that they made the decision to follow the crowd on the Capitol grounds and to enter the Capitol building. They have stated to undersigned counsel they deeply regret their decision to travel to Washington, D.C.

### III. LEGAL ANALYSIS

#### A. The Cases Cited by the Government Involve Significantly More Egregious Behavior Than That Presented in the Instant Case.

It is undisputed that Defendants committed the crime of parading, when they entered the Capitol building. In fashioning an appropriate sentence, courts are directed by statute to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). Undersigned counsel would suggest that this Honorable Court should employ leniency when sentencing these Defendants, based on the cases discussed in subpart B below.

The Government correctly points out that "no previously sentenced case contains the same balance of aggravating and mitigating factors present here" and then cites three cases which it contends are comparable to the present case. (See Government's Sentencing Memorandum, ECF document 15, p. 15). As will be discussed below, the three cases mentioned in the Government's *Sentencing Memorandum* are not cases which should be utilized by this Honorable Court in sentencing Defendants because these cases are distinguishable on their facts.

#### 1. *United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH

In *United States v. Joshua Bustle and Jessica Bustle,* 21-cr-238-TFH, the Bustle defendants entered the Capitol Building (approximately 10-15 minutes before Kuecken and Smith) through the wide open Rotunda doors, while police officers stood near the open doorway. Like Kuecken and Smith, the Bustle defendants did not cause any damage to person or property while inside the Capitol Building. This is where the factual similarities end between these two cases.

Bustle's actions were much more egregious than the actions of Kuecken and Smith. The *Bustle* defendants were in the Rotunda for approximately 20 minutes; Kuecken and Smith remained in the Rotunda for approximately 3 to 4 minutes. This significant difference in time that the respective defendants spent inside the Capitol Building weighs against using the *Bustle* case as guidance in the sentencing considerations in the present case. Another major difference in these cases is that Jessica Bustle posted on social media about January 6th, stating: "[w]e don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in DC today". Bustle further posted on social media that Vice President Pence was a "traitor" and that "we need a revolution".

Neither Kuecken nor Smith made any incendiary posts, whatsoever, on social media either before or after January 6th. While Smith never made any posts, Kuecken, as previously discussed above, only responded to a couple of posts. Her posts certainly were not intended to inflame or incite anyone. Accordingly, the differences between these two cases compel the conclusion that the *Bustle* case is distinguishable on its facts and should not be utilized by this Honorable Court to order home detention.

### 2. *United States v. Fox*, 21-cr-435-BAH

In *United States v. Fox*, 21-cr-435-BAH, another case cited by the Government, Fox was only in the Capitol building for less than two minutes. Similarly, Kuecken and Smith were in the Rotunda for a relatively short period of time, less than four minutes. This is the only similarity to the instant case.

Once again, Fox's actions were much more egregious than Kuecken and Smith. Fox entered the Rotunda by climbing through a broken window in the Senate Wing at approximately 3:12 pm, after the police had started clearing the Rotunda at approximately 3:06 pm. Kuecken and Smith

did not "break in" the Rotunda; rather they entered the Rotunda through a wide open doorway, behind scores of others. Moreover, unlike Kuecken and Smith, Fox repeatedly posted on Facebook both before and for months after January 6th. Specifically, during the weeks before January 6th, Fox not only posted on Facebook about his intentions to go to Washington D.C., but also of his hopes for a "civil war". Fox then posted photographs on Facebook of rioters vandalizing the Capitol while making entry into the Capitol and he voiced his approval of these destructive actions in his Facebook posts. After January 6th, Fox made several additional postings on Facebook stating that on January 6th they had walked into a building that "was ours" and added "I'd do it again, fight me." He continued with similar postings for several months after January 6th.

Finally, Kuecken and Smith fully cooperated with the FBI, not only meeting with them but also giving them access to their cell phones and providing them with articles of clothing they wore on that day. Fox, however, did not cooperate with the FBI and refused to give the FBI access to his cell phone. Clearly, the egregious actions by Fox during the weeks before January 6th, while at and inside the Capitol on January 6th, and his repeated postings for months after January 6th go far beyond Kuecken and Smith's actions in entering the Capitol and walking around for less than four minutes before leaving. For these reasons, the *Fox* case should not be utilized by this Honorable Court to order home detention for Kuecken and Smith.

### 3. *United States v. Wickersham*, 21-cr-606-RCL

In *United States v. Wickersham*, 21-cr-606-RCL (a matter decided by this Honorable Court) Wickersham saw acts of violence against police officers outside of the Capitol Building, however, this did not deter him from entering the building. Wickersham ascended the staircase by the northwest scaffolding seconds after the police line was breached and entered the Capitol building through the Senate Wing door. Wickersham then headed to the Crypt and appears to have pushed

the arm of a police officer at that time. Before exiting the Capitol, he held the door open for rioters and he also told an FBI agent that January 6th was "set up by Antifa" and that he was justified in entering the Capitol because he was a taxpayer.

Clearly, this case is distinguishable from the instant case. Kuecken and Smith did not engage in any violence or destructive behavior, whatsoever, unlike Wickersham. Moreover, Kuecken and Smith were only in the Rotunda itself and unlike Wickersham they did not roam throughout the Capitol building and they were certainly not near any members of Congress' offices. Once again, the violent actions of Wickersham compel the conclusion that the Wickersham facts and circumstances are significantly different from the instant case. Accordingly, the *Wickersham* case, should not be utilized by this Honorable Court to order home detention.

### B. The Following Cases are More Factually Similar to the Instant Case and Offer this Honorable Court Guidance in Determining a Just Sentence.

Undersigned counsel submits that there are January 6th cases which can offer guidance to this Honorable Court in fashioning just sentences in this matter. In contradistinction to the above-cited cases by the Government, the undersigned submits that the following three cases are more akin to the facts presented in the instant case and will better aid this Honorable Court. In each of the cases cited below, the defendant received a term of probation, rather than home detention, for the crime of parading in the Capitol Building.

#### 1. *United States v. Anna Morgan-Lloyd*, 21-cr-164-RCL

In *United States v. Anna Morgan-Lloyd*, 21-cr-164-RCL (another case decided by this Honorable Court), Morgan-Lloyd was sentenced to 36 months probation, 120 hours of community service, and ordered to pay $500 in restitution. In *Morgan-Lloyd*, the defendant together with her friend, Dona Bissey, were among the first 50 people to enter the building. Morgan-Lloyd later posted a photo on Facebook bragging about January 6th, stating that "we can spread the truth about

7

what happened and open the eyes of some of our friends."   In another post she wrote: "That was the most exiting day of my life."  While these facts are different than those presented in the instant case, the following facts are quite similar.

Like Kuecken and Smith, Morgan-Lloyd did not engage in any preplanning or coordination with others before entering the Capitol building.  Neither Smith and Kuecken, nor Morgan-Lloyd engaged in any acts of violence or made any incendiary or inciteful statements while on the grounds or while inside the Capitol.  Morgan-Lloyd only remained in the Capitol Building for a few minutes and was only in one specific area of the building, just as was Kuecken and Smith.  Like Smith and Kuecken, Morgan-Lloyd cooperated with law enforcement and submitted to a voluntary interview and search of her cell phone.  Finally, in both of these cases, the defendants pled guilty and have admitted responsibility for their actions.

As can be gleaned from the above, the actions of Kuecken and Smith more closely resemble the actions of this defendant, rather than the actions of the defendants in the cases cited by the Government.  For these reasons, the undersigned humbly suggests to this Honorable Court, that Kuecken and Smith also be sentenced to a term of probation rather than home detention.

### 2. *United States v. Douglas Wrangler and Bruce Harrison*, 1:21-cr-00365-DLF

Similarly, in *United States v. Douglas Wrangler and Bruce Harrison*, 1:21-cr-00365-DLF both defendants were sentenced to 24 months probation.  In this case, Wrangler and Harrison were part of a large crowd walking to the Capitol after attending then President Trump's rally.  As they approached the Capitol, they saw people clashing with law enforcement, pushing against the bicycle rack barricades, climbing scaffolds, throwing objects and spraying police.  Despite seeing this, at approximately 3:00 pm they entered the Capitol Building through the Senate Wing Doors. They saw broken glass inside the Capitol before they turned down a hallway towards the Capitol's

Crypt. While in the Crypt, Harrison took a photograph of Wrangler by Abraham Lincoln's bust while Wrangler chanted "USA". Both defendants then posed for photographs by George Washington's bust. Wrangler and Harrison then left the building approximately thirty minutes later, at 3:30 pm, through the Senate Wing doors.

Like Kuecken and Smith, both defendants fully cooperated with the FBI investigation, provided the FBI with their cell phones and clothing and pled guilty early on in their case. These actions clearly demonstrate an acceptance of responsibility, on behalf of all four defendants.

Several other factors weigh against home detention for each of these four defendants. In both cases, the defendants entered the Capitol through an open door, well-after the Capitol Building was initially breached at 2:06 pm. None of these defendants pre-planned or prepared for a riot, or expressed hostility or aggression towards law enforcement. Nor did they coordinate with others to help facilitate the riot; or made public statements about January 6th; or glorified January 6th on social media. In light of the similarities between the Wrangler and Harrison case and the present case, defendants Kuecken and Smith should likewise be sentenced to a term of probation rather than home detention.

### 3. *United States v Sean Cordon*, 21-cr-269-TNM

Finally, in *United States v Sean Cordon,* 21-cr-269-TNM, Sean Cordon was sentenced to two months probation and ordered to pay $4000 in restitution. In this matter, Sean Cordon and his brother Kevin arrived at the January 6th rally wearing light body armor and carrying a gas mask. Kevin Cordon also wore an American flag like a cape around his shoulders. After the rally, the Cordon brothers walked to the Capitol Building, arriving at the Upper West Terrace at approximately 2:15 pm., minutes after the Capitol building was breached. When they arrived, they saw people crowding the Senate Wing door and entranceway and saw a rioter engaged in a shoving

match with a police officer. They entered the Capitol at 2:25 pm by climbing through the broken window on the side of the Senate Wing door and walked through the Crypt with other rioters. While there, Sean took a video of them stating "We're in the Capitol". At 2:30 pm they exited the Capitol through a window next to the Senate Wing door after being in the Capitol for 5 minutes.

Unlike Kuecken and Smith, Sean Cordon entered and exited the Capitol through a broken window, rather than an open doorway. Nevertheless, Sean Cordon received a sentence of two months probation. For these reasons, the undersigned submits that Defendants Kuecken and Smith should receive a sentence of probation, rather than home detention.

## IV.   HARDSHIP CONSIDERATIONS

Defendants respectfully request that this Honorable Court weigh the hardship considerations discussed below in formulating an appropriate sentence in this case. Defendants submit to this Honorable Court that justice would be best served by sentencing these defendants to a term of probation (not home detention) and community service.

Both Deborah Kuecken, age 67 and Gary Smith, age 71 live in a rural environment in mid-Michigan, approximately 5 miles apart from each other. There is no public transportation anywhere nearby. They are retired and are on a fixed income. Uber is not available where they live and Lyft would be almost a financial impossibility for both of them.

They both are caregivers for their elderly brother and his invalid wife who live in Rochester Hills, approximately 30 miles away. Their brother is a disabled Vietnam veteran, who was recently in a serious motor vehicle accident and was discharged from inpatient hospital treatment only a few days ago. Their sister-in-law is unable to care for her husband because she is severely disabled with numerous medical conditions and in the late stages of dementia. Kuecken and Smith are solely responsible for the care of their brother and sister-in-law.

Additionally, on a weekly and sometimes daily basis both Kuecken and Smith must travel a significant distance for basic necessities, for doctor and dental appointments, for church services, and pick up mail. Both Kuecken and Smith have sensitivities and reactions to heavy metals and agricultural additives and must purchase foods without additives or processing. Such items are not available at local grocery stores and require them to travel to specialty stores which are 9.5 miles away (Richmond), and 30 miles away (Grosse Pointe) and 59 miles away (Stover). These grocery items cannot be delivered through Instacart because of the distances from their homes.

Due to these dietary restrictions, both Kuecken and Smith must make frequent visits to their doctors for testing, assessments, and plan adjustments. These appointments require Defendants to travel between 19 and 25 miles one way. Finally, Smith regularly attends prayer meetings and church services in Stover which is a 60 mile drive from his home.

Counsel humbly suggests that based on the above factors, home detention will pose an undue hardship on these Defendants. A term of probation will adequately serve the goals of deterrence and punishment in this case.

### V.     CONCLUSION

In sum, Defendants Kuecken and Smith have fully complied with all of the conditions of their release. They deeply regret entering the Capitol on January 6th and are truly remorseful for their actions. Undersigned counsel submits that Kuecken and Smith are excellent candidates for probation and community service.

WHEREFORE for the reasons discussed above, undersigned counsel humbly requests that this Honorable Court sentence Defendants Kuecken and Smith to a term of probation, rather than home detention, with community service and appropriate restitution.

Respectfully submitted,

/s/ *David Griem*
David Griem (Michigan Bar P23187)
Admitted *pro hac vice*
David Griem & Associates
21 Kercheval Ave., Suite 363
Grosse Pointe Farms, MI 48236
313.962.8600/fax 313.290.2666
davidgriemlaw@gmail.com

Dated: June 6, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON June 7, 2023, a copy of the foregoing Sentencing Memorandum Defendants Deborah Kuecken and Gary Smith was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also served a copy by emailing same to the attorney of record at her business email address.

Respectfully submitted,

/s/ *David Griem*
David Griem (Michigan Bar P23187)
Admitted *pro hac vice*
David Griem & Associates
21 Kercheval Ave., Suite 363
Grosse Pointe Farms, MI 48236
313.962.8600/fax 313.290.2666
davidgriemlaw@gmail.com